**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**AT LOUISVILLE**

**CIVIL ACTION NO. 3:13-CV-309-JDM**


DANIEL L. MILLER                                                                          PLAINTIFF

V.

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY                       DEFENDANT

## MEMORANDUM OPINION

The plaintiff, Daniel L. Miller, filed this action pursuant to 42 U.S.C. §405(g), seeking

judicial review of an administrative decision of the Commissioner of Social Security, who denied

his application for disability insurance benefits. At issue is whether the administrative law judge

erred by failing to properly evaluate the opinion evidence regarding Mr. Miller's mental residual

functional capacity and by failing to properly evaluate the results of a 2010 MRI when

determining Mr. Miller's physical residual functional capacity.

After reviewing the parties' fact and law summaries and the administrative record, the

court concludes that the ALJ erred in her assessment of the opinions of Mr. Miller's treating

physician, Dr. Chandra Reddy, and that this case must be remanded to the Commissioner of

Social Security for further evaluation.


## I.

Mr. Miller filed an application for disability insurance benefits in December 2008 and

alleged he became disabled in January 2003.[1]   After his application was denied by the state

agency, he requested a hearing with an administrative law judge (an "ALJ").  Following the

---

[1] Admininstrative Record at 62, 164 (hereinafter "R. at __").

evidentiary hearing, at which Mr. Miller and a vocational expert testified, the ALJ issued an opinion in which she determined that Mr. Miller suffers from the severe impairments of degenerative disc disease of the cervical, lumbar and thoracic spine; a panic disorder; and anxiety disorder; a depressive disorder; and substance abuse in remission, none of which, either singly or in combination, meet or equal the criteria of any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.[2] The ALJ further determined that Mr. Miller retains the residual functional capacity to perform light work with certain limitations to accommodate his physical and mental limitations. Based on hypotheticals presented by the ALJ at the hearing, the vocational expert testified that Mr. Miller is not capable of returning to his past relevant work, but can perform certain jobs that exist in the national economy.[3]

## II.

Mr. Miller asserts that the ALJ erred in her evaluation of the opinion evidence and by failing to properly evaluate a 2010 MRI of his spine. This court may not try a Social Security appeal *de novo*, but it need not affirm the conclusions of the Commissioner of Social Security if an administrative law judge failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *see also Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008).

## A.

In determining Mr. Miller's mental residual functional capacity, the ALJ gave the opinions of Dr. Reddy, Mr. Miller's physician who had treated Mr. Miller for years, and the opinions consultative examining psychologist, little weight.[4] She accorded great weight,

---

[2] R. at 63-71.
[3] R. at 44-50.
[4] R. at 69.

2

however, to the opinions of the record reviewing consultants, who never examined Mr. Miller.[5]

Mr. Miller asserts that this was in error, because the ALJ dismissed the opinions of his doctor

solely on the basis of the fact that she is not a mental health specialist.

The ALJ's discussion of Dr. Reddy's opinions regarding Mr. Miller's mental health and

capabilities consists, in its entirety, of the following statements:

> As for the opinion evidence, the undersigned accords little weight
> to the opinions expressed by the claimant's treating internist, Dr.
> Reddy (Exhibits 35F, 36F). … Dr. Reddy indicated in the mental
> assessment that the claimant had poor functioning in his
> occupational adjustments, performance adjustments and personal
> social adjustments (Exhibit 36F). The undersigned notes that Dr.
> Reddy is an internist, not a specialist. Therefore, Dr. Reddy is not
> qualified to give an assessment regarding the claimant's mental
> functioning. … Dr. Reddy's determination that the claimant is
> disabled from full-time competitive employment is also
> inconsistent with the objective evidence and claimant's level of
> functioning. Furthermore, pursuant to Social Security Ruling 96-
> 5p, all opinions rendered as to a claimant's status as "disabled" are
> clearly reserved to the Commissioner.[6]

Dr. Reddy did not actually state that Mr. Miller is "disabled" as a matter of law, but she

effectively did so by noting: "Patient has a H/O anxiety disorder/PTSD and cannot be gainfully

employed."[7] And, the ALJ was correct—that issue is reserved for the Commissioner. *See* 20

C.F.R. § 404.1527(d).

The problem lies with the ALJ's decision not to give controlling weight to Dr. Reddy's

more specific opinions (*e.g.,* that Mr. Miller has difficulty maintaining focus and has a poor

ability to behave appropriately, deal with other persons, and respond to stress). The standards

imposed on an administrative law judge's treatment of medical evidence are set forth in 20

C.F.R. §404.1527. Pursuant to the treating physician rule, "the administrative law judge 'will'

---

[5] R. at 69.
[6] *Id.*
[7] R. at 861.

give a treating source's opinion controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record.'" *Cole v. Comm'r of Soc. Sec.,* 661 F.3d 931, 937 (6th Cir. 2011)(citing 20 C.F.R. §404.1527(d)(2)).

If the administrative law judge does not accord controlling weight to the opinion of a treating physician, she must then balance the following factors to determine what weight to give the opinion:

1. the length of the treatment relationship and the frequency of examination,
2. the nature and extent of the treatment relationship,
3. the supportability of the opinion,
4. the consistency of the opinion with the record as a whole, and
5. the specialization of the treating source.

*Id.* (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)).  The Sixth Circuit is mindful that administrative law judges have "a clear duty" to "always give good reasons" for their determination of the weight to give a treating source's opinion. *Id.* at 937-38; 20 C.F.R. § 404.1527(d)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p.

It is true that Dr. Reddy is an internist and not a psychiatrist or other type of mental health specialist, but that is only one factor to be considered under 20 C.F.R. § 404.1527.   It cannot, on its own, support a decision to deny a treating physician's opinions controlling weight. Dr. Reddy began treating Mr. Miller for both his mental and physical impairments not long after his release from prison, and continued treating him through the time of the administrative

hearing. [8] Dr. Reddy diagnosed Mr. Miller with anxiety, insomnia, and bi-polar disorder, and kept detailed treatment notes regarding her assessment of Mr. Miller's condition and the prescriptions she issued.[9] Thus, at the time she issued her opinions, Dr. Reddy had observed Mr. Miller on a regular basis for two years, and had acquired a longitudinal knowledge of Mr. Miller's condition.

Other than stating that Dr. Reddy's opinion is inconsistent with the other medical evidence of record and the Mr. Miller's overall level of functioning, the ALJ made no further effort to consider Dr. Reddy's opinion in light of the requirements established by 20 C.F.R. § 404.1527. In addition to being cursory, those statements are not entirely accurate. Dr, Reddy's opinions are not inconsistent with the only other psychological opinion evidence from a person who examined Mr. Miller (*i.e.,* Jessica Huett, Ph.D., the consultative examiner).[10] The ALJ rejected Dr. Huett's opinions because the ALJ deemed them too reliant on Mr. Miller's self-reported symptomology,[11] but Mr. Miller's objective records from other providers and other sources reveal that he has had a long and consistent struggle with, and treatment for anxiety, and also has a long and well-documented history of distraction and depression.[12] He also presented to a Phoenix Health Care facility in June 2010 in a "clinically unstable condition."[13] In addition,

_____

[8] *See generally* R. at 631-35, 769-773, 1025-1038.

[9] *Id.*

[10] *Compare* R. at 860-62 *with* R. at 512-17.

[11] The court observes, based on this ALJ's and other ALJ's opinions, that, if the Commissioner's policy is to reject certain psychological consultants' opinions solely because they rely on the examiner's evaluation of the claimant's self-reported history and symptomology, instead of the results of objective testing, perhaps the agency's limited funds should be spent only on those consultants who do administer objective tests to examinees, or the agency should require those examiners who do not currently make it a practice to administer tests to begin doing so. The current system seems unnecessarily wasteful.

[12] *See generally* R. at 272-511, 554-81, 610-857, 863-1038.

[13] The ALJ rejected the findings in the intake assessment because they were not made by a Nurse Practitioner, who is not an "acceptable medical source" capable of establishing the existence of an impairment. *See* R. at 69; 20 C.F.R. § 404.1513(a). Nurse practitioners are, however, capable of providing reliable evidence regarding the *severity* of an impairment, *see* 20 C.F.R. § 404.1513(d)(1), and thus her assessment that Mr. Miller presented as

he has a lengthy history of only relatively short-term employment,[14] and he has been imprisoned twice for assault, which evinces at least a not-insignificant degree of difficulty dealing with other persons.[15]

To be sure, there is also evidence that might support the ALJ's ultimate conclusions. For example, when evaluating Mr. Miller's credibility, the ALJ noted that Mr. Miller's claim that he had difficulty concentrating did not match her observations of him during the hearing. And, although Dr. Reddy stated that Mr. Miller has poor ability to function independently, he lives alone and is able to groom himself and shop for food.[16] Also, there are no records of his treatment for mental health issues other than substance abuse during his periods of incarceration.[17] But, this is a moot point. The Sixth Circuit has emphasized that an ALJ's failure to give good reasons for rejecting a treating physician's opinion can be reversible error, even if the decision is otherwise supported by substantial evidence. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). For, when an ALJ fails to conduct the analysis required by 20 C.F.R. § 404.1527, she deprives the court of its ability to conduct a meaningful review of her decision. *See id.,* 378 F.3d at 544. The ALJ's cursory analysis of the substance of Dr. Reddy's opinion, and her incorrect assertion that Dr. Reddy is "not qualified to give an assessment regarding [Mr. Miller's] mental functioning," fall short of the analytical and explanatory requirements established by the applicable regulations and existing case law.

---

highly anxious and clinically unstable should not have been rejected simply because she was not a licensed physician or psychologist.

[14] R. at 176-180. 258-60.

[15] R. at 174-75, 319, 351.

[16] R. at 35.

[17] *See* R. at 473-511, 1018-22; *see generally* R. at 962-1022. The court takes judicial notice of the fact that our nation's prison systems do not always have or devote adequate resources for the detection and treatment of mental illness in their inmates.

**B.**

In determining Mr. Miller's physical residual functional capacity, the ALJ gave the opinions of Mr. Miller's physician little weight and accorded great weight to the opinions of the consultative examiner and the record reviewing doctors. The ALJ noted the limitations of the consultative examiner's report, which was prepared before a series of post-accident MRIs were performed in March 2010,[18] but noted no such limitations with respect to the record-reviewing doctor's report, which was also prepared before the 2010 MRIs. Mr. Miller asserts this was in error. He argues that the ALJ failed to properly consider the 2010 MRI and the fact that Dr. Reddy is the only physician both to have examined him after the MRI and issued an opinion about his physical abilities. This argument lacks merit.

The ALJ did evaluate the March 2010 MRI. She noted its existence, correctly cited to it in the record, and correctly cited to his treatment plan post-MRI, which consisted of an evaluation by a spine specialist who recommended only "gentle and conservative" chiropractic care for Mr. Miller. She also correctly noted that, whatever the condition of his back was in March 2010, he felt sufficiently able to attempt to move a refrigerator.

Nevertheless, the ALJ's evaluation of Dr. Reddy's opinions regarding Mr. Miller's physical abilities falls as short of the requirements as her evaluation of Mr. Miller's mental abilities. It consists solely of the following statements: "Dr. Reddy indicated the claimant was limited to less than the full range of sedentary exertional work but would miss work 'all the time' (Exhibit 35F). … Dr. Reddy's assessment of the claimant's limited physical capability is inconsistent with her office notes and the conservative care provided to the claimant over the treating period." Yet, Dr. Reddy's treatment notes consistently refer to Mr. Miller's chronic

---

[18] R. at 774-78.

back pain and decreased range of motion in his back. They also reveal a consistent pattern of treatment with both Naproxen and relatively high doses of the narcotic medicine Hydrocodone. As is the case with Dr. Reddy's opinions regarding Mr. Miller's psychological state, there exists evidence in the record that might support a decision to give Dr. Reddy's opinion less than controlling weight. But without more exposition and specificity than the ALJ provided, this court has no means of conducting a meaningful review of the ALJ's evaluation of Dr. Reddy's opinions regarding Mr. Miller's physical impairments.

## III.

For the foregoing reasons, the court concludes that the ALJ failed to appropriately evaluate the opinions of Mr. Miller's treating physician regarding his psychological impairments. The court will therefore issue an order remanding this case for further proceedings pursuant to 42 U.S.C. § 405(g).

DATE:

cc:  counsel of record